# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**SPIRLIN J. EDWARDS,**                    Case No. 5:18 CV 566

    Petitioner,                    Judge Pamela A. Barker

    v.                    Magistrate Judge James R. Knepp II

**WARDEN NEIL TURNER,**

    Respondent.                    **REPORT AND RECOMMENDATION**

### INTRODUCTION

*Pro se* Petitioner Spirlin J. Edwards ("Petitioner"), a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Neil Turner, Warden of North Central Correctional Complex ("Respondent"), filed an Answer/Return of Writ (Doc. 8); Petitioner filed a Reply/Traverse (Doc. 10)[1], and Respondent filed a Sur-Reply (Doc. 11). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Doc. 4). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

For the purposes of habeas corpus review of state court decisions, findings of fact made by a state court are presumed correct and can only be contravened if the habeas petitioner shows, by clear and convincing evidence, erroneous factual findings by the state court. 28 U.S.C. §

---

1. Parties and Courts commonly use the terms "Return of Writ" and "Traverse" to refer to what the Rules Governing Section 2254 Cases now term an "Answer" and "Reply". *See* Rule 5 of the Rules Governing Section 2254 Cases.

2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Ninth District Court of Appeals set forth the following facts on direct appeal:

{¶ 2} Edwards and S.K. met in October 2012 and began dating shortly thereafter. Edwards and S.K.'s family got along well during their relationship. Consequently, Edwards had contact phone numbers for S.K.'s family including her brother and father, B.K. The relationship ended on January 30, 2015. On that day, S.K. went to Edwards' apartment to retrieve some personal items. When S.K. told Edwards she no longer wanted to be in a relationship with him, Edwards shoved her and she fell. No report was made of the incident.

{¶ 3} Thereafter, S.K. and B.K. began receiving threatening text messages and emails from unknown senders. S.K. changed her phone number on two separate occasions in an attempt to avoid the messages. Edwards called S.K.'s place of employment in Independence, Ohio, multiple times, identifying himself as a police officer in order to successfully obtain S.K.'s new phone number. S.K. reported the calls to Officer Murphy of the Independence Police Department as well as an incident where she discovered her tires were slashed. Edwards subsequently pleaded guilty to charges of impersonating a police officer.

{¶ 4} S.K. and B.K. continued to receive threatening messages and reported the threats to Officer Bell of the City of Stow Police Department. Edwards subsequently pleaded guilty to telecommunication harassment in the Stow Municipal Court.

{¶ 5} Nonetheless, S.K. and B.K. continued to receive threatening messages. The messages, however, came from unfamiliar or unidentified phone numbers and email addresses and the senders identified themselves as "Valerie," "Andrew Peters," "John Wick," "Felix Franse," and "DeQuinn Jones." Many of the threatening messages included death threats toward S.K., B.K., and the rest of their family. Through a joint investigation, Officer Bell and Officer Murphy were able to link the threatening messages to Edwards' IP address. In May 2015, S.K. was granted a civil protection order against Edwards.

{¶ 6} On May 8, 2015, a call was made from Edwards' mother's phone number to the Stow–Munroe Falls High School ("Stow High School"). The caller told the Stow High School receptionist that there was a bomb in the school and that it was "going to go boom." Consequently, Stow High School was evacuated and searched. No bomb was found.

{¶ 7} The Summit County Grand Jury subsequently indicted Edwards on the following six charges: (I) inducing panic in violation of R.C. 2917.31(A)(1)/(C)(5), a felony of the second degree; (II) telecommunications harassment in violation of R.C. 2917.21 (A)(4), a felony of the fifth degree; (III) telecommunications harassment in violation of R.C. 2917.21 (A)(3), a felony of the fifth degree; (IV) aggravated menacing in violation of R.C. 2903.21, a misdemeanor of the first degree; (V) aggravated menacing in violation of R.C. 2903.21, a misdemeanor of the first degree; and (VI) violating a protection order in violation of R.C. 2919.27, a misdemeanor of the first degree. Edwards pleaded not guilty and the matter proceeded through the pretrial process.

{¶ 8} Following trial, a jury returned "guilty" verdicts as to Counts I, II, III, IV, and V. However, the jury returned a "not guilty" verdict as to Count VI. For sentencing purposes, the trial court merged Count II into Count I. The trial court then sentenced Edwards as follows: Count I, inducing panic: a definite term of four years; Count III, telecommunications harassment: a definite term of eleven months; Count IV, aggravated menacing: a definite and local term of six months; and Count V, aggravated menacing: a definite and local term of six months. The trial court ordered Edward to serve the sentences imposed on Counts I and III consecutively with each other, but concurrently with Counts IV and V, for a total sentence of four years and eleven months incarceration.

*State v. Edwards*, 96 N.E.3d 890, 894 (Ohio Ct. App. 2017); (Ex. 15, Doc. 8-1, at 106-08).

**PROCEDURAL HISTORY**

State Court Conviction

On May 27, 2015, a Summit County, Ohio grand jury indicted Petitioner on one count of inducing panic (Count 1), two counts of telecommunications harassment (Counts 2-3), two counts of aggravated menacing (Counts 4-5), and one count of violating a protective order (Count 6). (Ex. 1, Doc. 8-1, at 3-5). Petitioner pleaded not guilty to each count upon arraignment. (Ex. 2, Doc. 8-1, at 6).

In September and October 2015, Petitioner filed three *pro se* motions to dismiss (Ex. 5, Doc. 8-1, at 11; Ex. 6, Doc. 8-1, at 12; Ex. 7, Doc. 8-1, at 13).

Petitioner, represented by counsel, went to trial in January 2016. *See* Doc. 8-2, at 1-1075 (Trial Transcript) (hereinafter "Tr."). During trial, the State moved to amend the

telecommunications harassment and aggravated menacing charges of the indictment to reflect the dates February 19, 2015 to May 7, 2015. (Tr. 526-28); *see also* Ex. 9, Doc. 8-1, at 21. Petitioner objected (Tr. 528-32), but the trial court granted the State's motion (Tr. 542-43). Petitioner also objected to the testimony of a Time Warner Cable employee, arguing he was not qualified to testify on the issue of phone "spoofing". (Tr. 512-13). The trial court sustained the objection and ordered the testimony stricken from the record. (Tr. 513-14). The trial court denied Petitioner's subsequent motion for a mistrial. *See* Tr. 531-36. Following the State's case, Petitioner moved for an acquittal under Ohio Criminal Rule 29(A) (Tr. 882-83), which the trial court denied (Tr. 885). The trial court also denied Petitioner's renewed Rule 29 motion at the conclusion of the trial. (Tr. 964).

On January 15, 2016, the jury found Petitioner guilty on all counts except Count 6 – violating a protective order. (Ex. 9, Doc. 8-1, at 20). Prior to sentencing, Petitioner filed a *pro se* motion for acquittal (Ex. 10, Doc. 8-1, at 22), which the trial court denied along with Petitioner's oral motion for a new trial (Doc. 8-2, Sentencing Transcript, at 32).

On March 1, 2016, the trial court sentenced Petitioner to an aggregate term of four years and eleven months imprisonment. (Ex. 11, Doc. 8-1, at 24-26).

Direct Appeal

In March 2016, Petitioner, through counsel, timely filed a notice of appeal to the Ohio Ninth District Court of Appeals. (Ex. 12, Doc. 8-1, at 27). In his brief, Petitioner raised six assignments of error:

1. Spirlin Edwards' due process was violated by the denial of a mistrial due to false testimony, contrary to the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 1, 10 and 16, of the Ohio Constitution.

2. Spirlin Edwards' due process and confrontation rights were violated by an unqualified witness authenticating business records, contrary to the Fifth, Sixth,

4

and Fourteenth Amendments to the United States Constitution and Article 1, Sections 1, 10 and 16, of the Ohio Constitution.

3. Spirlin Edwards' due process and confrontation rights were violated by the admission of hearsay evidence from unauthenticated records, contrary to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article 1, Sections 1, 10 and 16, of the Ohio Constitution.

4. Spirlin Edwards' right to effective assistance of counsel was denied, contrary to the Sixth Amendment to the U.S. Constitution and Article 1, Sections 1, 10 & 16 of the Ohio Constitution.

5. Spirlin Edwards' convictions were not supported by sufficient evidence, contrary to the Due Process Clause of the 5th and 14th Amendments to the U.S. Constitution and Article 1, Sections 1, 10 & 16 of the Ohio Constitution.

6. The trial court erred in imposing consecutive sentences, in violation of the Due Process Clause of the Fifth Amendment of the U.S. Constitution and Article 1, Sections 1, 10 and 16 of the Ohio Constitution.

(Ex. 13, Doc. 8-1, at 43-61) (capitalization altered). The State filed a responsive brief. (Ex. 14, Doc. 8-1, at 68-101). On August 16, 2017, the Ohio Ninth District Court of Appeals overruled each assignment of error, affirming Petitioner's convictions and sentences. *See Edwards*, 96 N.E.3d at 895-905; (Ex. 15, Doc. 8-1, at 106-29).

Petitioner, through counsel, filed a timely notice of appeal to the Ohio Supreme Court. (Ex. 16, Doc. 8-1, at 131-32). In his memorandum in support of jurisdiction, Petitioner raised four propositions of law:

1. An accused has fundamental Due Process and Confrontation Clause[] rights to a fair trial and is entitled to a mistrial when unduly prejudiced by the State knowingly eliciting false and misleading testimony. On appeal, Due Process requires that the appellate court address the claim when supported by specific reference to the record.

2. An accused has fundamental Due Process and Confrontation rights to have business records authenticated by a qualified individual who has independent knowledge of the procedures underlying the records' creation, retention, and preparation.

3. An accused has fundamental Due Process and Confrontation rights to confront the testimonial substance of records presented as evidence of guilt. Constitutional error substantially impairs these rights when witnesses are allowed to testify about these records without proper authentication or acceptance of the records into evidence.

4. An accused has a fundamental Sixth Amendment right to effective counsel, which includes challenging venue when no clear evidence is presented that the crime occurred in the proper jurisdiction.

(Ex. 17, Doc. 8-1, at 141-150). The State filed a waiver of memorandum in response. (Ex. 18, Doc. 8-1, at 177). On February 28, 2018, the Ohio Supreme Court declined jurisdiction. (Ex. 19, Doc. 8-1, at 178).

Petition for Post-Conviction Relief

On March 15, 2018, Petitioner filed a *pro se* motion for counsel with the trial court. (Ex. 20, Doc. 8-1, at 179-82).[2] On March 19, 2018, Petitioner filed a *pro se* petition for post-conviction relief, raising a single claim:

1. Convictions were not supported by sufficient evidence, contrary to the due process clause of the 5th & 14th amendments of the U.S. Constitution & article 1, sections 1, 10 & 16 of the Ohio Constitution.

Supporting facts: No evidence admitted at trial proved that Mr. Edwards made the bomb threat relating to Counts One and Two. Nor was evidence admitted at trial that proved Mr. Edwards sent threatening messages to the victims relating to Counts Three to Five. No witness was able to verify Mr. Edwards' identity in regards to Counts One to Five, nor was any evidence provided showing Mr. Edwards' identity, therefore Mr. Edwards' convictions were not supported by sufficient evidence.

(Ex. 21, Doc. 8-1, at 184-85). The State filed a memorandum in opposition alleging Petitioner's filing was untimely. (Ex. 22, Doc. 8-1, at 191-92). On May 22, 2018, the trial court denied the petition as both untimely and barred by *res judicata*. (Ex. 23, Doc. 8-1, at 193-94).

---

2. This motion was miscaptioned as a motion for an expert witness, but requested the appointment of counsel. *See* Ex. 20, Doc. 8-1, at 179-82.

## FEDERAL HABEAS CORPUS

On March 12, 2018, Petitioner timely filed the instant habeas petition. (Doc. 1). In it,

Petitioner raises four grounds for relief:

> **GROUND ONE**: Convictions were not supported by sufficient evidence.
>
> **Supporting Facts:** No evidence presented at trial showed me as the perpetrator. No cellular phone records showed me as the sender of threatening and harassing text messages to the victims. No proof was offered that I was the caller that made a bomb threat to Stow-Munroe Falls High School.
>
> **GROUND TWO:** Due Process was violated by denial of mistrial due to false testimony.
>
> **Supporting Facts:** During trial, the state presented John Holben, who repeatedly testified falsely, the court struck his testimony and informed the jury to disregard his testimony, at that point the jury is tainted and can't unhear his misleading testimony.
>
> **GROUND THREE:** Trial Court abused its discretion by amending dates on Counts 3 to 5.
>
> **Supporting Facts:** On May 5th, 2015, I pled guilty to Telephone Harassment, after which the victims still received harassing messages but not from me. New charges were filed May 7, 2015. The trial court allowed an amendment which allowed the state to use evidence from a previous [sic] because there was no evidence supporting the new charges, evidence which I pled guilty to prior[], which felt like double jeopardy.
>
> **GROUND FOUR:** Confrontation Rights were violated by an unqualified witness authenticating records.
>
> **Supporting Facts:** The State presented Brett Kutuchief who the trial court allowed to authenticate records regarding Stow High School even though he was not qualified to do so.

(Doc. 1, at 5-10) (capitalization altered).

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly

deferential standard for evaluating state-court rulings which demands that state-court decisions be

given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). Thus, a court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

**DISCUSSION**

For the reasons discussed below, the undersigned finds Grounds One and Three procedurally defaulted, and Grounds Two and Four either meritless or non-cognizable. As such, the undersigned recommends the Petition (Doc. 1), be denied.

<u>Exhaustion & Procedural Default</u>

To seek a writ of habeas corpus in federal court, a petitioner must first satisfy the requirements of 28 U.S.C. § 2254(b)(1)(A), which states: "[a]n application for a writ of habeas corpus . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State". Exhaustion requires a petitioner to "fairly present" federal claims "to the state courts, including the state court of appeals and the state supreme court." *Bray v. Andrews*, 640 F.3d 731, 734–35 (6th Cir. 2011) (citing *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009)); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This is to "alert[] [the state court] to the fact that the prisoner[ ] [is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (internal quotation marks omitted) (citations omitted). To accomplish this, a petitioner must fairly present the substance of his federal constitutional claims to the state courts before obtaining habeas relief. *Whiting v. Burt*, 395 F.3d 602, 612 (6th Cir. 2005) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Hence, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If a petitioner has failed to exhaust his state remedies and is barred from raising his claim by state law, his habeas claim is procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848; *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009). A petitioner may also procedurally default a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state

9

court." *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). If a petitioner fails to comply with a procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). Finally, in order to avoid default, the petitioner must demonstrate that there was "cause" for him to neglect a procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138.

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

*Ground One*

The undersigned finds that Petitioner's first ground (sufficiency of the evidence) is procedurally defaulted because he did not present it to all levels of the Ohio court system, and no avenue remains for him to do so. In his Traverse (Doc. 10), Petitioner does not explain his failure to comply with this procedural requirement.

Petitioner presented a sufficiency of the evidence claim to the Ninth District Court of Appeals in May 2016. (Ex. 13, Doc. 8-1, at 34, 59-61). However, he did not raise this claim in his subsequent appeal to the Ohio Supreme Court. *See* Ex. 17, Doc. 8-1, at 133-50. The failure to include a claim on appeal to the Ohio Supreme Court constitutes a procedural default of that claim.

*O'Sullivan*, 526 U.S. at 848. Further, in Ohio, claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata. State v. Perry*, 226 N.E.2d 104, 108 (Ohio 1967). It is well established in the Sixth Circuit that *res judicata* as applied under Ohio law is an adequate and independent state ground sufficient to foreclose habeas review. *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001).

Petitioner attempted to resurrect this claim in his petition for post-conviction relief (Ex. 21, Doc. 8-1, at 183-90), which the trial court denied on May 22, 2018 (Ex. 23, Doc. 8-1, at 193-94). As the trial court noted, Petitioner's post-conviction petition was untimely because he did not file it within 365 days from either (1) the date the trial transcript was filed in the court of appeals in his direct appeal; or (2) the deadline for filing a direct appeal as required by state law. *Id.*; Ohio Rev. Code § 2953.21(A)(2). Petitioner's transcripts were filed on June 24, 2016, thereby setting his deadline for requesting post-conviction relief at June 24, 2017. *See* Ex. 23, Doc. 8-1, at 193-94. Petitioner did not file his post-conviction petition until March 19, 2018. *See* Ex. 21, Doc. 8-1, at 183. Moreover, the trial court found Petitioner's claim barred by *res judicata* and, as noted, this is an independent and adequate state ground to foreclose habeas relief. *Coleman*, 268 F.3d at 429. Petitioner never appealed the trial court's denial.

Because Petitioner did not present both the factual and legal underpinnings of this claim to all levels of the Ohio courts (and he is now procedurally barred from doing so), *McMeans*, 228 F.3d at 681, he is now unable to obtain habeas review. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan*, 526 U.S. at 848; *Pudelski*, 576 F.3d at 605. The Court may now only consider the claim if Petitioner

can show cause and prejudice to overcome this default, or a miscarriage of justice to excuse the default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

*Ground Three*

The undersigned also finds Petitioner's third ground (trial court abuse of discretion by amending dates) procedurally defaulted because he did not raise it through the Ohio court system.[3] Further, Petitioner does not explain his failure to comply with this procedural requirement other than a subtle reference to a statement allegedly made by his appellate counsel where he advised Petitioner not to pursue it. *See* Doc. 10, at 8.

Petitioner did not raise this claim on direct appeal to the Ninth District Court of Appeals, *see* Ex. 13, Doc. 8-1, at 28-67, nor did he raise it to the Ohio Supreme Court, *see* Ex. 17, Doc. 8-1, at 133-75. In fact, Petitioner raises Ground Three for the first time in his habeas Petition. (Doc. 1). Petitioner filed a timely direct appeal, but did not include this claim within it. *See* Exs. 12, 13, Doc. 8-1, at 27-67. And, as noted above, claims appearing on the face of the record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata. Perry*, 226 N.E.2d at 108. Thus, because Petitioner did not present Ground Three on direct appeal, he is now procedurally barred from doing so and his claim is not suitable for habeas review. 28 U.S.C. § 2254(b)(1)(A). As is the case with Ground One, the Court may only consider the claim if Petitioner can show cause and prejudice or a miscarriage of justice to overcome the default. *Coleman*, 501 U.S. at 750.

---

3. The undersigned also concludes this ground is non-cognizable. *See Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986) ("An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings.").

*Cause and Prejudice / Miscarriage of Justice*

In his Traverse, Petitioner does not offer any cause or excuse as to why he failed to comply with the procedural rules set forth above – he only argues the underlying merits of his claims. *See* Doc. 10, at 5-13. Further, Petitioner does not set forth any new evidence to suggest actual innocence enough to make a "colorable showing of factual innocence", as required to show a "fundamental miscarriage of justice", *McCleskey v. Zant*, 499 U.S. 467, 495 (1991), and does not argue he was prejudiced in any way other than that which makes up the substance of his underlying habeas claims. For these reasons, the undersigned finds Petitioner cannot overcome the procedural default of Grounds One and Three.

Ground Two

In his second ground for relief, Petitioner asserts his due process rights were violated when the trial court denied his motion for a mistrial following John Holben's testimony. (Doc. 1, at 7); (Doc. 10, at 7-8). Respondent asserts this ground is meritless, and the state court's determination on the issue is entitled to AEDPA deference. (Doc. 8, at 26-32). For the following reasons, the undersigned recommends this Ground be denied.

Petitioner raised the claim in Ground Two on direct appeal to the Ninth District Court of Appeals (Ex. 13, Doc. 8-1, at 43-47), and again to the Ohio Supreme Court (Ex. 17, Doc. 8-1, at 141-43). Therefore, the claim is properly preserved for habeas review. 28 U.S.C. § 2254(b)(1)(A).

In Ground Two, Petitioner asserts his due process rights were violated when the trial court denied his motion for a mistrial. (Doc. 10, at 7-8). Specifically, Petitioner argues that the "use" of repeated "false testimony" by witness John Holben violated his due process rights. *Id*. Respondent contends the Ninth District Court of Appeals reasonably rejected these arguments in accordance with clearly established precedent and the decision is entitled to AEDPA deference. (Doc. 8, at 26-

32). The undersigned addresses Petitioner's argument on two fronts – first, the facial non-cognizablility of Ground Two (the denial of a mistrial); and second, the underlying due process violation in the trial court's admission of "false testimony". In either respect, Ground Two must fail.

First, the Court will not have jurisdiction over a petitioner's claims for purposes of habeas review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("A claim based *solely* on an error of state law is not redressable through the federal habeas process.") (emphasis in original) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)).

"The decision whether to grant or deny a motion for mistrial rests within the sound discretion of the trial court." *Adams v. Bunting*, 2015 WL 6658680, at *12 (N.D. Ohio) (citing *State v. Sage*, 510 N.E.2d 343, 349-50 (Ohio 1987)). Thus, to the extent Petitioner argues the trial court abused its discretion under Ohio law by denying a mistrial, such a claim does not present a question of federal law and is not cognizable on habeas review. *Id.*; *see also Hicks v. Bobby*, 2006 WL 3256512, at *14 (N.D. Ohio); *Sauto v. Ohio Adult Parole Auth.*, 2016 WL 1179766, at *10 (N.D. Ohio), *report and recommendation adopted*, 2016 WL 1170792; *Smith v. Gansheimer*, 2012 WL 6649198, at *8-9 (N.D. Ohio), *report and recommendation adopted*, 2012 WL 6628260.

Next, the undersigned finds Petitioner's underlying claim that the "false testimony" of John Holben violated his due process rights also unavailing. Petitioner alleges – without evidentiary support – that the prosecutor (and Holben himself) knew Holben was going to lie on the witness

14

stand, thereby alluding to a prosecutorial misconduct allegation. (Doc. 10, at 8). He also broadly alleges that the fundamental fairness of his entire trial was compromised by the prosecutor eliciting "false testimony" from Holben. *Id*. at 7. The Ninth District Court of Appeals addressed this argument:

{¶ 10} In his first assignment of error, Edwards contends that the trial court erred by denying his motion for a mistrial when the State knowingly presented false and misleading testimony that was unduly prejudicial. We disagree.

{¶ 11} Pursuant to Crim.R. 33(A)(1), a trial court may grant a new trial upon motion of a defendant when his substantial rights are materially affected by an "[i]rregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial." A trial court may also grant such a motion when the "[m]isconduct of the jury, prosecuting attorney, or the witnesses for the state" materially affects the defendant's substantial rights. Crim.R. 33(A)(2).

{¶ 12} "Great deference is afforded to a trial court's decision regarding a motion for mistrial[.]" (Internal citations omitted.) *State v. Howes*, 9th Dist. Summit No. 24665, 2010-Ohio-421, 2010 WL 447064, ¶ 11. We recognize that the trial judge is in the best position to determine whether the declaration of a mistrial is warranted under the circumstances as they have arisen in the courtroom. *State v. Kyle*, 9th Dist. Summit No. 24655, 2010-Ohio-4456, 2010 WL 3676812, ¶ 25, citing *State v. Glover*, 35 Ohio St.3d 18, 19, 517 N.E.2d 900 (1988); *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 92. Accordingly, this Court "will not second-guess such a determination absent an abuse of discretion." *Ahmed* at ¶ 92. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621, 614 N.E.2d 748 (1993).

{¶ 13} "'Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible.' "*State v. Witcher*, 9th Dist. Summit No. 26111, 2012-Ohio-4141, 2012 WL 3986892, ¶ 32, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected." *Howes* at ¶ 11, quoting *Wadsworth v. Damberger*, 9th Dist. Medina No. 3024–M, 2000 WL 1226620, *2 (Aug. 30, 2000). In determining whether a defendant was deprived of a fair trial, a court must determine whether, absent the error or irregularity, "the jury would have found the appellant guilty beyond a reasonable doubt." *Columbus v. Aleshire*, 187 Ohio App.3d 660, 2010-Ohio-2773, 933 N.E.2d 317, ¶ 42 (10th

Dist.), citing *State v. Maurer*, 15 Ohio St.3d 239, 267, 473 N.E.2d 768 (1984). To determine whether the alleged misconduct resulted in prejudice, a court must consider (1) the nature of the error, (2) whether an objection was made, (3) whether the trial court provided corrective instructions, and (4) the strength of the evidence against the defendant. *Id.* at ¶ 42, citing *State v. Tyler*, 10th Dist. Franklin No. 05AP-989, 2006-Ohio-6896, 2006 WL 3775876, ¶ 20.

{¶ 14} "The Supreme Court of Ohio has limited the instances when a judgment may be reversed on grounds of prosecutorial misconduct." *State v. Knight,* 9th Dist. Lorain No. 03CA008239, 2004-Ohio-1227, 2004 WL 508775, ¶ 6, citing *State v. Lott,* 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). "The analysis of cases alleging prosecutorial misconduct focuses on the fairness of the trial and not the culpability of the prosecutor." *Id.* "Accordingly, a judgment may only be reversed for prosecutorial misconduct when the improper conduct deprives the defendant of a fair trial." *Id.* at ¶ 6, citing *State v. Carter,* 72 Ohio St.3d 545, 557, 651 N.E.2d 965 (1995).

{¶ 15} In this case, the State called a Time Warner Cable Supervisor for Theft of Service as a witness. During that testimony, the State sought to authenticate certain phone records as well as introduce testimony concerning the inability to spoof a particular type of telephone line. Edwards's trial counsel objected to the testimony, arguing that the Time Warner supervisor was not qualified to testify on the subject of spoofing. The trial court initially overruled Edwards's objection, noting that the witness was "a supervisor in the department that investigates these things."

{¶ 16} However, based upon testimony elicited during cross-examination, the trial court subsequently determined that the Time Warner supervisor was indeed not qualified to testify on the issue and that his testimony on direct examination had been hearsay. The trial court then ordered the testimony to be stricken and a jury instruction was given as to the same. Edwards later moved for a mistrial, arguing that a jury instruction to disregard the supervisor's testimony was insufficient. In denying Edwards's motion, the trial court stated that Edwards' trial counsel's cross-examination of the Time Warner supervisor "was so withering" that the trial court did not trust that "the jury really believes that the [supervisor] knows what he was talking about on the technical issues."

{¶ 17} After a thorough review of Edwards' cross-examination of the supervisor, we determine that the trial court did not abuse its discretion when it denied Edwards' motion for mistrial. Specifically, we agree with the trial court's determination that the following exchange between Edwards' trial counsel and the Time Warner supervisor regarding landlines was indeed "withering:"

*** 

{¶ 18} Based upon the foregoing, we conclude that the trial court did not abuse its discretion when it denied Edwards' motion for mistrial.

*Edwards*, 96 N.E.3d, at 895-97; (Ex. 15, Doc. 8-1, at 108-13).

16

If Petitioner's underlying claim "is premised on prosecutorial misconduct, he must show that the [Ohio] Court of Appeals' decision on direct review was an unreasonable application of *Darden v. Wainwright*, 477 U.S. 168 . . . (1986)." *Key v. Rapelje*, 634 F. App'x 141, 145–46 (6th Cir. 2015). *Darden* held that a court must examine whether the prosecutor's conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). It is not enough to show that the prosecutor's conduct or remarks were "undesirable or even universally condemned." *Darden*, 477 U.S. at 181. Relevant here, "[t]o prevail on a claim that the government presented perjured testimony, [a defendant] must show '(1) that the statements were actually false; (2) the statements made were material; and (3) [the] prosecution knew they were false.'" *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995) (quoting *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993)). Stated differently, Petitioner must show the prosecutor presented false material statements, with the knowledge such statements were false, and this conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.

Here, the Ninth District Court of Appeals conducted a thorough analysis of Petitioner's prosecutorial misconduct argument and concluded the trial court did not abuse its discretion when it denied his motion for a mistrial. *Edwards*, 96 N.E.3d at 897. The appellate court emphasized that the trial court took immediate corrective action by striking the offending testimony and issuing a corrective instruction, *id*, and the undersigned notes that a jury is presumed to follow the instructions it is given, *see United States v. Newsom*, 452 F.3d 593, 604 (6th Cir. 2006). Petitioner has voiced disagreement over the trial court's denial of a mistrial and its handling of the offending testimony, but he certainly has not demonstrated that the prosecutor *knew* the statements were false, nor that his trial was rendered fundamentally unfair such to deny him due process. Further,

17

Petitioner has not demonstrated how the appellate court's holding was contrary to, or an unreasonable application of, federal law. 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 405. As such, the undersigned recommends Ground Two be denied as meritless.

Ground Four

In Petitioner's Ground Four, he asserts his "confrontation rights were violated by an unqualified witness authenticating records." (Doc. 10, at 11). Specifically, Petitioner argues that Brett Kutuchief was permitted (over objection) to authenticate phone records, "even though the records were outside of his job responsibilities." *Id*. Respondent contends that the Ninth District Court of Appeals reasonably rejected Petitioner's argument and that decision is entitled to AEDPA deference and, alternatively that this issue is not cognizable on habeas review. (Doc. 8, at 36). For the reasons discussed below, the undersigned recommends Ground Four be denied as it is either meritless or non-cognizable.

Petitioner properly preserved Ground Four for habeas review by raising it at all levels on direct appeal. *See* Exs. 13 & 17, Doc. 8-1, at 47-50, 143-45; *see also* 28 U.S.C. § 2254(b)(1)(A).

The Ninth District Court of Appeals addressed, and reasonably rejected, Petitioner's Ground Four claim:

> {¶ 19} In his second assignment of error, Edwards contends that the trial court erred and abused its discretion when it allowed an unqualified witness to authenticate phone records relevant to Count I, inducing panic, and Count II, telecommunications harassment. We disagree.

> {¶ 20} The Sixth Amendment to the United States Constitution preserves the right of a criminal defendant "to be confronted with the witnesses against him." However, "the Confrontation Clause applies only to testimonial statements." *State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, ¶ 59. A statement is testimonial if it was given with the "primary purpose of creating an out-of-court substitute for trial testimony." *Ohio v. Clark*, 576 U.S. ──, 135 S.Ct. 2173, 2183, 192 L.Ed.2d 306 (2015), quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011).

18

{¶ 21} The Supreme Court of Ohio has stated that business records "are not 'testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are "by their nature" not prepared for litigation.' " *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, 853 N.E.2d 621, ¶ 82, quoting *People v. Durio*, 7 Misc.3d 729, 794 N.Y.S.2d 863, 867 (2005). Evid.R. 803(6) governs the admissibility of such business records. With regard to this rule, the Supreme Court of Ohio has expounded the following:

> To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the "custodian" of the record or by some "other qualified witness."

*State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171, quoting Weissenberger, *Ohio Evidence Treatise* 600, Section 803.73 (2007). "A trial court has broad discretion to admit a business record into evidence pursuant to Evid.R. 803(6), and an appellate court will not disturb a trial court's decision unless the trial court has abused its discretion." *State v. Baker*, 9th Dist. Summit No. 21414, 2003-Ohio-4637, 2003 WL 22047697, ¶ 9.

{¶ 22} Relevant to Counts I and II, the State sought to admit telephone records from AT & T to show that a specific telephone number, later identified as belonging to the Stow–Munroe Falls Board of Education, received two telephone calls from Edwards' mother's phone number around the time of the bomb threat. Although the docket entry shows that a subpoena was issued to AT&T, the subpoena is not in the record. In order to authenticate the records, the trial court allowed the State to present testimony from a witness employed as an assistant sales manager at AT&T Mobility's Akron–Fairlawn location. During his testimony, the sales manager stated that his "position is to coach the sales reps into having the same behaviors [he] had when [he] was in their position." He also stated that AT&T keeps certain records in the regular course of business, that the information is stored electronically, and that he could look up and print documents associated with a specific customer. When asked if he could identify a record the State sought to publish to the jury, he stated the document was "subscriber information on a wire line account." Included in the document was a record of call logs that the sales manager recognized as being recorded and kept in the electronic data records of AT&T.

{¶ 23} When the State attempted to publish the records to the jury, Edwards objected, arguing that the State had not established a foundation sufficient to publish to the jury. The trial court then allowed the State to ask additional questions in order to lay "more foundation" as to the sales manager's qualifications. During this questioning, the State asked the sales manager if he had access to the records

at issue or if he was able to get caller records in his position. The sales manager replied that he did not have the authority to look through client records, but that he was able to review the documents before testifying. However, he did state that he was aware that the documents were "official documents" or "real documents of AT&T." The sales manager further stated that in order to get documents in such detail, "especially if it's from a date that far back," there "would have to be a subpoena or a request from law enforcement for that information."

{¶ 24} After the State's additional questions, Edwards again objected. At that time, the trial court allowed Edwards to cross-examine the sales manager out of order "on the issue of his qualifications as custodian of the records for AT&T." Upon cross-examination, the sales manager stated that he had not retrieved the records himself. Rather, AT & T's legal department had provided them to him. When Edwards' trial counsel asked the sales manager, "[a]nd this is not anything that's commonly * * * or regularly kept within your store or within your job description, isn't that correct?", the sales manager replied, "Correct." Although the trial court noted Edwards' trial counsel's continued objection, the court found the sales manager was qualified to authenticate the records and to testify as to their contents.

{¶ 25} This Court has stated, "[t]he witness whose testimony establishes the foundation for a business record need not have personal knowledge of the exact circumstances of preparation and production of the document." *Baker*, 2003-Ohio-4637, 2003 WL 22047697 at ¶ 11, citing Evid.R. 803(6). "However, the witness must 'demonstrate that he or she is sufficiently familiar with the operation of the business and with the circumstances of the preparation, maintenance, and retrieval of the record in order to reasonably testify on the basis of this knowledge that the record is what it purports to be, and was made in the ordinary course of business.'" *Id.*, quoting *Keeva J. Kekst Architects, Inc. v. George Dev. Group*, 8th Dist. Cuyahoga No. 70835, 1997 WL 253171, *5 (May 15, 1997).

{¶ 26} Nonetheless, we need not decide whether the sales manager was qualified to authenticate the records at issue because, even assuming he was not qualified and that the trial court erred by admitting his testimony, a review of the record shows that the trial court's alleged error was harmless beyond a reasonable doubt. *See State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 43; *see also State v. Garcia*, 2016-Ohio-4667, 66 N.E.3d 1208, ¶ 61. A Constitutional error is harmless beyond a reasonable doubt "'if the remaining evidence, standing alone, constitutes overwhelming proof of [the] defendant's guilt.'" (Alterations sic.) *Hood* at ¶ 43, quoting *State v. Williams*, 6 Ohio St.3d 281, 452 N.E.2d 1323 (1983), paragraph six of the syllabus.

{¶ 27} In this case, the State offered the sales manager's testimony to show that specific telephone numbers, later identified as belonging to the Stow–Munroe Falls Board of Education and Stow High School, received two phone calls from another specific telephone number, later identified as Edwards' mother's phone number, at a specific time. Absent this information, the State was still able to provide the jury

with alternative phone records from Edwards' mother's telephone provider showing two calls were placed from Edwards' mother's house at the time of the bomb threat. The first call was made to the Stow–Munroe Falls Board of Education at 10:55 a.m. and lasted 12 seconds. The second call was made to Stow High School at 10:56 a.m. and lasted 19 seconds. The receptionist at Stow High School testified she had received the threatening phone call between 10:55 a.m. and 11:00 a.m. She also stated that based on the tone and pitch of the caller's voice, she believed the caller was a male in his late twenties. Edwards' mother testified that Edwards had been staying with her for about a week prior to the date of the threatening phone call and was at her home the day on the day of the call. She further stated that she did not place the call to Stow High School and that to the best of her knowledge, neither did Edwards' brother.

{¶ 28} Accordingly, assuming without deciding that the trial court erred by admitting the sales manager's testimony, we conclude that such error was harmless beyond a reasonable doubt. Therefore, Edwards' second assignment of error is overruled.

*Edwards*, 96 N.E.3d, at 897-900; (Ex. 15, Doc. 8-1, at 113-18).

Here, upon review, the Ninth District Court of Appeals concluded there was no Confrontation Clause violation because business records "are not testimonial in nature because they are prepared in the ordinary course of regularly conducted business and are by their nature not prepared for litigation." *Id*. at 898 (internal citations and quotations omitted). Indeed, the appellate court's rationale here comports with clearly established federal law. *See Melendez-Diaz v. Mass.*, 557 U.S. 305, 324 (2009) ("Business and public records are generally admissible absent confrontation . . . because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."); *see also United States v. Hillis*, 656 F. App'x 222, 230-31 (6th Cir. 2016). Thus, Petitioner cannot show that the state appellate court's resolution of his Confrontation Clause claim was contrary to, or an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d).

Moreover, in Ground Four, Petitioner asks this Court (at least in part) to second guess this *state* court's decision based upon *state* law and *state* evidentiary rules. (Doc. 10, at 11-12). It is

well established that "errors in application of state law, especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.3d 959, 962 (6th Cir. 1983); *Estelle*, 502 U.S. at 67 (an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction. . . it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions.") (citations omitted); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). State-court evidentiary rulings cannot rise to the level of due process violations unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). In evaluating a state court's evidentiary ruling, a federal court may only grant habeas relief if the ruling is "so egregious that it results in a denial of fundamental fairness[.]" *Bugh*, 329 F.3d at 512. Such a matter is not properly reviewed by a federal court. Because Ground Four is not cognizable on habeas review, the relevant inquiry becomes – is the Ninth District Court of Appeals' ruling regarding Petitioner's Confrontation rights "so egregious that it results in a denial of fundamental fairness"? *Id.* The undersigned concludes that it is not. Petitioner has not established how the Ninth District's ruling was in any way "egregious", such that it offends the notion of "fundamental fairness". *Id.* Further, Petitioner has not demonstrated that the Ninth District's ruling was contrary to, or an unreasonable application of, federal law. Thus, the undersigned cannot recommend it be disturbed.

For these reasons, the undersigned finds Petitioner's claim is either meritless or non-cognizable.

Evidentiary Hearing

In his Traverse, Petitioner requests, very generally, that the Court conduct an evidentiary hearing. (Doc. 10, at 13). Where a petitioner "never specifie[s] what could be discovered through an evidentiary hearing" or where his claims are "either barred from review or without merit," a district court need not hold an evidentiary hearing. *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001). Nor is "'an evidentiary hearing . . . required on issues that can be resolved by reference to the state court record.'" *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (quoting *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998)). Because, as discussed above, Petitioner's grounds for relief are procedurally defaulted, meritless, or non-cognizable, the undersigned denies his request for an evidentiary hearing.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the Court recommends the Petition be denied.

s/ James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).